1   DANIEL ROBERT BARTLEY, CA Bar No. 79586
    BARTLEY LAW OFFICES
2   4040 Civic Center Drive, Suite 200
    San Rafael, CA 94903-4184
3   Telephone 415 898-4741 Fax 415 898-4841
    E-mail DanielBartleyLaw@aol.com
4
    Attorneys for Relator
5
6
7
8

9               UNITED STATES DISTRICT COURT

10              EASTERN DISTRICT OF CALIFORNIA

11
    [SEAL],                      ) Case No. 1:11-cv-01776 LJO-SMS
12                               )
13                  Plaintiffs,  ) COMPLAINT FOR DAMAGES, WITH DEMAND
                                 ) FOR JURY TRIAL
14                               )
                                 )
15                               )
    vs.                          )
16                               )
                                 )
17                               )
                                 )
18  [SEAL],                      )
                                 )
19                               ) *[FILED UNDER SEAL PURSUANT TO THE*
                                 ) *FEDERAL FALSE CLAIMS ACT AND THE*
20                  Defendants.  ) *CALIFORNIA FALSE CLAIMS ACT]*
                                 )
21                               )
                                 )
22                               )
                                 )
23                               )
                                 )
24                               )
                                 )
25                               )
                                 )
26                               )
                                 )
27                               )
                                 )
28                               )
                                 )

**FILED**

OCT 25 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
          DEPUTY CLERK

**SEALED**

1   DANIEL ROBERT BARTLEY, CA Bar No. 79586
    BARTLEY LAW OFFICES
2   4040 Civic Center Drive, Suite 200
    San Rafael, CA 94903-4184
3   Telephone 415 898-4741 Fax 415 898-4841
    E-mail DanielBartleyLaw@aol.com
4
    Attorneys for Scott Driscoll, M.D., Relator
5

6

7

8                       **UNITED STATES DISTRICT COURT**
                        **EASTERN DISTRICT OF CALIFORNIA**
9

    UNITED STATES OF                ) Case No.
10  AMERICA, and STATE OF           )
    CALIFORNIA, *ex rel.* SCOTT     ) **COMPLAINT FOR DAMAGES, WITH DEMAND**
11  H.M. DRISCOLL, M.D. and         ) **FOR JURY TRIAL**
    SCOTT H.M. DRISCOLL,            )
12  M.D., individually and personally, ) ***Qui Tam* Causes on behalf of United States:**
                                    )   1. Knowingly Causing a False or Fraudulent Claim
13                                  ) to Be Presented in Violation of the False Claims Act, 31 USC.
                                    ) §3729(a)(1)(A)
14                      Plaintiffs, )   2. Knowingly Making, Using, or Causing to Be Made or
                                    ) Used, a False Record or Statement Material to a False or
15                                  ) Fraudulent Claim, in Violation of 31 USC. §3729(a)(1)(B)
    vs.                             )   3. Conspiracy to Defraud the United States by Getting a
16                                  ) False or Fraudulent Claim Allowed or Paid in Violation of 31
                                    ) USC §3729(a)(1)(C)
17  TODD SPENCER M.D.               ) ***Qui Tam* Causes on behalf of State of California:**
    MEDICAL GROUP, INC.,            )   4. Knowingly Causing A False Claim to Be Presented, in
18  TODD SPENCER, M.D.,             ) Violation of Cal Gov C §12651(a)(1)
    MADERA COMMUNITY                )   5. Submission of a False Record to Obtain Payment of a
19  HOSPITAL, SIERRA KINGS          ) False or Fraudulent Claim, in Violation of Cal Gov C.
    DISTRICT HOSPITAL, and          ) §12651(a)(2)
20  DOES 1 through 100, Inclusive,  )   6. Conspiracy to Defraud the State of California by
                                    ) Getting a False or Fraudulent Claim Allowed or Paid in
21                                  ) Violation of Cal Gov C §12651(a)(3)
    Defendants.                     )   7. Failure by Beneficiary of False Claim to Disclose False
22                                  ) Claim to the State of California, in Violation of Cal Gov C
                                    ) §12651(a)(8)
23                                  ) **Individual/Personal Causes on Behalf of Scott Driscoll:**
                                    )   8. Retaliation in Violation of 31 USC §3730(h)
24                                  )   9. Retaliation in Violation of Cal Gov C §12653
                                    )  10. Retaliation in Violation of Cal Lab C §1102.5
25                                  )  11. Retaliation in Violation of Cal B&P C §2056
                                    )  12. Retaliation in Violation of Cal H&S C §1278.5
26                                  )  13. Failure and Refusal to Pay Wages in Violation of Cal
                                    ) Lab C §201 and §203
27                                  )  14. Breach of Employment Contract
                                    )  15. Quantum Meruit
28                                  )  16. Wrongful Termination in Violation of Public Policy
    _____                    )
                                    ) *[FILED UNDER SEAL PER THE FCA AND CFCA]*

1  Plaintiff and Relator, SCOTT H. M. DRISCOLL, M.D., "Relator", alleges:

2  **Introduction**

3  1. (a) This is an action pursuant to the federal False Claims Act ("FCA") and the California
4  False Claims Act ("CFCA") to recover damages and civil penalties on behalf of the United States of
5  America for Medicare fraud and the State of California for Medi-Cal fraud. (b) This action is against a
6  radiology group and two of four medical institutions at which the radiology group had contracts (the
7  other two being prisons own and operated by the California Department of Corrections). (c) During
8  the period December 1, 2007, to April 9, 2010, Relator observed that Defendants Todd Spencer,
9  M.D. and Todd Spencer M.D. Medical Group, Inc. performed unnecessary radiology and CT scanning
10  procedures, billed for procedures never attempted, and delivered medical reports and medical bills that
11  clearly are inflated. (d) The false claims relate to radiology and the modalities of mammography and
12  CT scanning. (e) The false claims proximately resulted in damages in the way of professional
13  assessments by the SPENCER GROUP and damages in the way of technical assessments by the host
14  institution. (f) There was a direct causal connection between such billing fraud and Defendants' false
15  certifications of compliance with applicable laws and regulations. (g) The relevant period during which
16  Relator alleges actionable FCA violations is a period beginning six years prior to the filing of this
17  Complaint forward. (h) The relevant period during which Relator alleges actionable CFCA violations is
18  a period beginning ten years prior to the filing date of this Complaint forward. (i) Relator estimates over
19  $52 million in unjustified charges by Defendants to federal and state taxpayers. (j) In addition, Relator
20  asserts individual and personal claims of retaliation, wrongful termination, and unpaid wages, related to
21  his employment.

22  **Relator**

23  2. (a) Relator SCOTT H. M. DRISCOLL, M.D. ("DRISCOLL" and "DR. DRISCOLL"), is
24  a 72-year-old citizen of the United States of America, born in Chicago in 1939. (b) Relator is a
25  resident of Fresno, Fresno County, California. (c) Relator is a physician with a subspecialty in
26  radiology. (d) Relator is licensed by the State of California to practice medicine. (e) Relator is a
27  Princeton graduate, with an AB degree. (f) Also, Relator earned a master's degree at University of
28  Pennsylvania before attending medical school. (g) Relator graduated from Exeter, Princeton, and

1    Northwestern University medical schools, with high honors in all. (h) Relator completed the require-

2    ments of internship, residency, and fellowship, in cardiovascular radiology and angiography at UCLA in

3    Los Angeles. (i) Relator practiced in cardiovascular radiology and angiography for the first part of his

4    career, in both private practice and academia. (j) Relator was on the faculty at UCLA and Stanford

5    University. (k) Approximately one year after finishing his fellowship, The White House selected him to

6    be the angiographer and radiologist to the President of the United States. (l) Relator was the director

7    of a large tandem cardiac cath lab in Southern California, following which he became the director of the

8    department of radiology at a medium-size hospital. (m) For nine years, from 1986 to 1995, Relator

9    worked as a Director of Radiology at South Bay Community Hospital, at Redondo Beach, California.

10    (n) Also, Relator served Director of Radiology at SKDH for approximately four years, during the

11    majority of his service there, from 2001 to 2005.

12         3. (a) Relator, at all times alleged herein, was, and is, an original source, having direct and

13    independent knowledge of the information on which the allegations herein are based. (b) Prior to filing

14    this Complaint, Relator had firsthand knowledge of the alleged fraud, and he obtained such knowledge

15    through his own labor unmediated by anything else. (c) Relator complained on multiple occasions to

16    DR. SPENCER about what was most probably the fraudulent practice of medicine, and DR.

17    SPENCER in response screamed at Relator, denied such practice, and instructed Relator not to even

18    mention the word "fraud."

19                            **Defendants**

20         4. (a) Defendant TODD D. SPENCER, M.D. ("SPENCER" and "DR. SPENCER") is an

21    individual physician. (b) DR. SPENCER, at all times set forth herein, has done business as both an

22    individual person and as the principal and president of the TODD SPENCER M.D. MEDICAL

23    GROUP, INC. ("SPENCER GROUP"), his alter ego. (c) According to DR. SPENCER'S website,

24    his practice's address is Madera Community Hospital, 1250 East Almond Avenue, Madera, California

25    93637. (d) A Florida native, DR. SPENCER graduated from Emory University Medical School in

26    Atlanta. (e) He did his training in radiology at Cook County Hospital, in Chicago. (f) He then did his

27    fellowship in interventional radiology at Johns Hopkins Hospital. (g) He worked as an interventional

28    radiologist at the St. Agnes Hospital in Fresno, California, until the Chief of Radiology terminated his

1    employment due to excessive drug use and arriving to the hospital intoxicated in the morning. (h) He
2    relocated to Madera, California, where he was required to take anger management seminars and to
3    participate in a drug rehabilitation program.

4         5. (a) Defendant MADERA COMMUNITY HOSPITAL ("MCH") is a hospital established
5    in the State of California in 1971 as a California not-for-profit corporation exempt under IRS code
6    501c(3). (b) MCH's address is 1250 East Almond Avenue, Madera, Madera County, California
7    93637. (c) MCH is a freestanding, community-based organization and is not associated with any other
8    hospital or health system. (d) The hospital contains 106 acute care beds, a 16-bed Emergency
9    Department and a 10-bed Intensive Care Unit. (e) MCH also operates two rural health care clinics
10   and a home health agency. (f) MCH is named a Defendant only as to liability for damages arising from
11   the SPENCER GROUP at MCH.

12        6. (a) Defendant SIERRA KINGS DISTRICT HOSPITAL ("SKDH") is a 44-bed general
13   medical and surgical short-term acute care hospital incorporated in the State of California. (b) SKDH's
14   address is 372 West Cypress Avenue, Reedley, Fresno County, California 93654. (c) SKDH is a
15   District Authority owned hospital. (d) SKDH is named a Defendant only as to liability for damages
16   arising from the SPENCER GROUP at SKDH.

17        7. (a) Relative to all counts, Relator sues fictitious Defendants Does 1 through 100, inclusive,
18   because their names, and/or capacities, and/or facts showing them liable are not known presently. (b)
19   Relator is unaware of the true names and capacities of the Defendants sued as Does 1 through 100. (c)
20   Relator will amend his complaint when the true names and capacities have been ascertained. (d) Each
21   Doe Defendant is responsible in some actionable manner for the events, occurrences, injuries and
22   damages alleged herein.

23        8. The terms "Defendants" will refer collectively to the aforesaid Defendants acting by and
24   through their managerial employees, and each of them.

25        9. Managerial employees of each the Defendants, in doing the acts and things described in
26   this complaint, were acting within the course and scope of their respective agencies and/or employment
27   with their particular Defendant employer, with the knowledge and consent of such Defendant, and each
28   of them, unless otherwise indicated.

1    10. (a) Each of the Defendants agreed and conspired with one another to engage in the acts

2    alleged herein, and each such co-conspirator committed the acts alleged herein in furtherance of their

3    conspiracy. (b) In so doing, Defendants violated Cal. Penal C. § 182(a)(1), which prohibits a

4    conspiracy between two or more persons to commit any crime; Cal. Penal C. § 182(a)(4), which

5    prohibits conspiracies to obtain money or property by false pretenses; and Cal. Penal C. § 182(a)(5),

6    which prohibits conspiracies to commit "any act injurious to the public health."

7                               **Jurisdiction and Venue**

8    11. (a) This is an action brought pursuant to the Federal False Claims Act, 31 U.S.C. §§

9    3729, et seq., and subject matter jurisdiction is invoked pursuant to 28 U.S.C. § 1331.

10    12. This case arises from the wrongful conduct of the Defendants incident to the unlawful use

11    of funds of the United States of America and the State of California

12    13. This Court has in personam jurisdiction over the Defendants under 31 U.S.C. § 3732(a),

13    which authorizes nationwide service of process.

14    14. (a) 31 U.S.C. § 3732(a) provides "Any action under section 3730 may be brought in any

15    judicial district in which the Defendant or, in the case of multiple Defendants, any one Defendant, can

16    be found, resides, transacts business, or in which any proscribed by section 3729 occurred." (b)

17    Venue is proper in the Eastern District of California because most of the alleged conduct occurred

18    within the boundaries of the Eastern District.

19    15. This Court has supplemental jurisdiction over Relator's individual and personal claims of

20    retaliation, wrongful termination, and unpaid wages.

21

22                               **GENERAL ALLEGATIONS**

23    **FCA Liability for Reimbursement Requests for Medically Unnecessary Purposes**

24    16. (a) Submitting a request for Medicare reimbursement for medically unnecessary purposes

25    is a false claim under section 3729(a)(1)(A), because Medicare laws prohibit payment for items and

26    services not reasonable and necessary. 14 U.S.C. 13956(a)(1)(A). (b) A statement or record, such

27    as an invoice, is not required to establish a violation of 3729(a)(1)(A). (c) A policy, practice, or course

28    of conduct to fraudulently induce the Government to part with its money may establish inflated false

claims. (d) A defendant submitting a Medicare reimbursement form implicitly certifies compliance with the statute prohibiting Medicare payments for services that are not reasonable and necessary.

17. (a) The Center for Medicare and Medicaid Services ("CMMS"), a branch of the U.S. Department of Health and Human Services, is the federal agency that administers the Medicare program and that monitors the Medicaid programs offered by each state. (b) CMS is responsible to make both coverage and medical necessity determinations, and may issue a National Coverage Determination ("NCD"). (c) If no NCD has been issued, or if an NCD requires further clarification, Medicare carriers and intermediaries may develop a local coverage determination ("LCD"). (d) The NCD for Computed Tomography indicates that the contractor's medical staff may determine that use of a CTscan as the initial diagnostic test was not reasonable and necessary when it was not supported by the patient's symptoms or complaints stated on the claim form. (e) Claims for CTscans are reviewed for evidence of abuse, which might include the absence of reasonable indications for the scans, an excessive number of scans, or unnecessarily expensive types of scans, considering the facts in the particular cases. (f) The NCD for Mammograms indicates that a radiological mammogram is a covered diagnostic test when a patient has distinct signs and symptoms for which a mammogram is indicated, when a patient has breast cancer, or when a patient is asymptomatic, but, on the basis of history and other factors that the physician deems significant, the physician's judgment is that a mammogram is appropriate. (g) DR. SPENCER and his SPENCER GROUP submitted false Medicare claims, where there is substantial evidence of medically unnecessary services under his protocol, for example the standard by NCDs and LCDs, Medicare pamphlets and newsletters that collectively explained requirements and codes, documents such as referral requests and consultation reports, the doctor's own testimony, Current Procedural Terminology ("CPT") Manual definitions, and descriptions provided by government witnesses.

18. There is an indelible record of the Department of Radiology's "protocol" (instructions of what to do and how to do it) available in DR. SPENCER'S billing office, in the Department of Radiology, and at each x-ray technician's station.

\\\

**CFCA Liability**

19. (a) The California Department of Health Care Services ("DHCS") (formerly the California Department of Health Services or "DHS") enacts regulations for California's Medicaid program, known as "Medi-Cal." As participating Medi-Cal providers, Defendants were and are subject to DHSC regulations that require them to provide services to Medi-Cal patients at their most favorable rates. California Code of Regulations, title 22, section 51501, subdivision (a), requires as follows: no provider shall charge for any service or any article more than would have been charged for the *same service* or article to *other purchasers of comparable services or articles under comparable circumstances.* (Emphasis added.) (b) The primary statute targeted at Medi-Cal fraud is Cal. Welfare & Institutions C. § 14107, which prohibits presenting a false or fraudulent claim for furnishing services or merchandise, with intent to defraud, knowingly submitting false information for hte purpose of obtaining greater compensation than that to which one is legally entitled for services or merchandise, knowingly submitting false information for the purpose of obtaining authorization for furnishing services or merchandise, and knowingly and willfully executing or attempting to execute a scheme or artifice to defraud the Medi-Cal program or to obtain Medi-Cal money or property by false statements or fraud. (c) In addition, false claims for health care benefits and a variety of related conduct are prohibited by Cal. Penal C. § 550(a), which specifically prohibits, inter alia, knowingly making or causing to be made a false or fraudulent claim for payment of a health care benefit. (d) In addition, false claims for healthcare benefits are prohibited by Cal. Penal C. § 487, which prohibits grand theft and of Cal. Penal C. §§ 484 and 532, which prohibit one from knowingly and designedly, by any false or fraudulent representation or pretense, defrauding any person of money or property. (e) Defendants, via their conduct set forth herein, violated Cal. Welfare & Institutions C. § 14107, Cal. Penal C. §§ 484, 487, 532, and 550(a).

20. Defendants' Medi-Cal Provider Agreements also made clear their duty, consistent with the program's public purposes, to charge their lowest fees to DHCS and refrain from conduct that would harm the Medi-Cal program or its beneficiaries. Among other commitments, Defendants agreed to do all the following:

**Compliance with Laws and Regulations**. Provider agrees to comply with all applicable provisions of Chapters 7 and 8 of the Welfare and Institutions Code (commencing with Sections 14000 and 14200), and any applicable rules or regulations promulgated by DHS pursuant to these chapters. . . .

**Forbidden Conduct.** Provider agrees that it shall not engage in conduct inimical to the public health, morals, welfare and safety of any Medi-Cal beneficiary, or the fiscal integrity of the Medi-Cal program.

**Provider Fraud and Abuse.** Provider agrees that it shall not engage in fraud or abuse. . . .

**Prohibition of Rebate, Refund or Discount.** Provider agrees that it shall not offer, give, furnish, or deliver any rebate, refund, commission, preference, patronage dividend, discount, or any other gratuitous consideration, in connection with the rendering of health care services to any Medi-Cal beneficiary. Provider further agrees that it shall not solicit, request, accept, or receive, any rebate, refund, commission, preference, patronage dividend, discount, or any other gratuitous consideration, in connection with the rendering of health care services to any Medi-Cal beneficiary. Provider further agrees that it shall not take any other action or receive any other benefit prohibited by state or federal law.

## Required Certification by FDA

21. (a) The State of California, as a condition of receiving State of California Medi-Cal funding for mammographies, requires that qualifying institutions be certified by the FDA.

## Claims in Violation of FCA and CFCA

22. (a) Defendants presented, or caused to be presented, false and fraudulent claims to the U.S. and the State of California for approval for payment. (b) DR. SPENCER and the SPENCER GROUP instructed the staff of the four affected medical institutions, through the SPENCER "protocol," to perform unnecessary mammography and unnecessary CT scanning, and to prepare reports for inflated billings.

23. (a) Each of such claims for payments was, and is, a "claim" under the FCA. (*See U.S. ex rel. Aflatooni v. Kitsap Physicians Services*, 163 F.3d 519 (9th Cir. 1999).) (b) Defendants' submission of false claims for reimbursement for medically unnecessary procedures, under Medicare and other federally organized health programs, constituted a false claim under the FCA. (*See U.S. ex rel. Lowman v. Hilton Head Health System L.P.*, 487 F.Supp.2d 682 (D.S.C. 2007).) (c) A statement or record, such as an invoice from SPENCER GROUP or from one of the four affected

1  institutions, is not required to establish a violation of the FCA. (*See U.S. ex rel. Fallon v. Accudyne*

2  *Corp.*, 921 F.Supp. 611, 627 (W.D. Wis. 1995).) (d) The policy, practice, and course of conduct by

3  Defendants to fraudulently induce the Government to part with its money established inflated false

4  claims. (*See U.S. v. Incorporated Village of Island Park*, 888 F.Supp. 419 (E.D. N.Y. 1995).)

5  (e) In February 17, 2011, the U.S. Department of Health and Human Services announced that Medi-

6  care fraud cases charged to the Medicare Fraud Task Force include cases related to diagnostic testing.

7  (*See* U.S. Dept. of Health and Human Services, *Medicare Fraud Task Force Charges 111*

8  *Individuals for More than $225 Million in False Billing and Expands Operations to Two*

9  *Additional Cities*, Feb. 17, 2011, at http://www.hhs.gov/news/press/2011pres/02/20110217a.html.)

10  (f) Defendants devised or intended to devise a scheme to defraud (or to perform specified fraudulent

11  acts), and use of the mail for the purpose of executing, or attempting to execute, the scheme (or

12  specified fraudulent acts), in violation of the federal mail fraud statute, 18 U.S.C. § 1341, in violation of

13  the California general fraud statute, Cal. Welfare & Institutions C. § 14107, and in violation of Cal.

14  Penal C. § 550(a).

### Locations Where False Claims Occurred

24.  Defendants DR. SPENCER and the SPENCER GROUP were providing radiology
services at four different institutions during the following periods: (a) Madera Community Hospital –
approximately 1997 to present; (b) Sierra Kings District Hospital – early March 2005 to August 1,
2010; (c) Valley State Prison for Women ("VSPW") – at least from 2002 to present; and (d) Central
California Women's Facility ("CCWF") – at least from 2002 to present.

25.  (a) VSPW is a female-only prison owned and operated by the State of California
Department of Corrections and Rehabilitation. (b) VSPW's address is 21633 Avenue 24, Chowchilla,
California 93610. (c) VSPW's operations include provision of medical care to inmates. (d) VSPW
opened in April, 1995. (e) As of September 2010, VSPW had a design capacity of 1,980 but a total
institution population of 3,561, for an occupancy rate of 180 percent. (f) VSPW is one of the locations
where the SPENCER GROUP engaged in the conduct made the subject of Relator's qui tam claims.
\\\

1 (g) Because VSPW is a state-owned entity, exempt from liability under the FCA and the CFCA,

2 Relator makes no claim against VSPW.

3 26. (a) CCWF is a female-only prison owned and operated by the State of California

4 Department of Corrections and Rehabilitation. (b) CCWF's address is 23370 Road 22, Chowchilla,

5 California 93610, directly across from VSPW. (c) CCWF is the largest female correctional facility in

6 the United States. (d) CCWF houses the State of California's death row for women. (e) CCWF's

7 operations include provision of medical care to inmates. (f) CCWF is one of the locations where the

8 SPENCER GROUP engaged in the conduct made the subject of Relator's qui tam claims. (g) Because

9 CCWF is a state-owned entity, exempt from liability under the FCA and the CFCA, Relator makes no

10 claim against CCWF.

11

12

### Representative Examples Illustrative of the Class
### of All Claims Covered by Defendants' Fraudulent Scheme

13 27. (a) DR. SPENCER and the SPENCER GROUP, during the periods in question,

14 routinely performed unnecessary and useless CTscans of the abdomen and pelvis, without contrast

15 (radiopaque dye), notwithstanding that medical scholars have long concluded that there is no useful

16 information without contrast. (b) The only patients for whom SPENCER GROUP properly did

17 CTscans without contrast were patients with kidney stones and allergies. (c) On December 14, 2007,

18 DR. DRISCOLL personally observed that scores of CTexams of the abdomen and the pelvis, from the

19 two prisons (CCWF and VSPW), all included CTwithout I.V. contrast – a sequence that has no

20 medical value, contains excessive and unnecessary radiation, and is very expensive. (d) Because these

21 deficiencies had been discussed extensively in the medical literature, DR. DRISCOLL instructed Ms

22 Leslie Espinola, R.T., Chief x-ray technologist at the Chowchilla prisons (CCWF and VSPW), to

23 delete this unnecessary imaging sequence from future studies. (e) In response, DR. SPENCER within

24 minutes telephoned DR. DRISCOLL and commanded, "Don't alter my protocols! And don't *ever* do

25 this again!" (f) DR. SPENCER made no attempt to address the medical, scientific, or financial aspects

26 of his decision.

27 28. (a) In December, 2009, a CTangiogram of the lower extremities of an older man was

28 performed because of suspected PAD (peripheral artery disease). (b) Relator personally read this

1   study and personally submitted it to Medical Records at MCH. (c) Mr. Forrest Berry, a Medical

2   Transcriber in MCH Medical Records, and DR. SPENCER'S "inside man," three times in a row

3   returned the study to Relator, with a demand that Relator dictate findings on "the other four studies."

4   (d) Yet, there was only one study, and it would be fiction to maintain that there were five. (e) This was

5   an example of "unbundling" – *i.e.*, breaking a procedure into its component parts and billing for the

6   many instead of the one. (f) Such "unbundling" is prohibited by MediCare and Medi-Cal. (g) Because

7   there was only one study and not five, Relator contacted Mr. Berry and declared "What's going on? Is

8   this fraud?" (h) Several minutes later, DR. SPENCER angrily pulled Relator into his office and

9   declared, "Don't you *ever, ever,* again use that word 'fraud' in this department or in this hospital! And

10   don't *ever* let the administrators down the hall hear you say that!" (i) Such unbundling occurred in

11   approximately 10% of the cases handled by the SPENCER GROUP.

12   29. (a) Defendants, during the periods in question, routinely performed unnecessary and

13   useless CTscans of the chest, abdomen and pelvis incident to percutaneous biopsy of the chest,

14   abdomen, and pelvis. (b) The patient in each such circumstance had always had a previous CTscan in-

15   house or elsewhere. (c) All that the percutaneous biopsies required are three or four slices through the

16   "mass" in the chest or liver to judge whre to insert the needle, how deep, what angle, etc. (d) It is not

17   necessary to repeat a diagnostic CTfrom the neck to the pubis. (e) These unnecessary CTslices have

18   no diagnostic usefulness, they create excessive radiation, and they are very expensive.

19   30. (a) Defendants, during the periods in question, routinely performed unnecessary and

20   and useless CTangiography. (b) In addition to doing a CTof the carotid arteries, Defendants routinely

21   did an additional C.T of the soft tissues of the neck. (c) Yet, there is no value in learning the anatomy

22   of the thyroid gland, tongue, salivary glands, etc. when the clinical problem is stroke, temporary stroke,

23   or bruit (murmur). (d) Defendants – both the hospital and the radiologist – routinely sent excessive

24   charges. (e) Even though the physician had never ordered CTscanning of the neck, such routinely was

25   performed because of the SPENCER GROUP'S "protocol."

26   31. (a) Defendants, during the periods in question, routinely made unnecessary use of

27   CTscans incident to draining abnormal fluid from the chest and abdomen via procedures known as

28   "thoracentesis" and "paracentesis." (b) Fully 98.5% of physicians in the U.S. perform thoracentesis and

1    paracentesis under ultrasound control rather than CTcontrol. (c) Yet, at MCH, Dr. SPENCER

2    performed this procedure exclusively under CTcontrol. (d) This method is not as effective, cannot use

3    gravity to assist, is slower, costs thousands of dollars as opposed to hundreds of dollars, and generates

4    radiation exposure whereas ultrasound has none. (e) The decision to use CTinstead of ultrasound

5    represented poor judgment and fraud.

6    32. Defendants, during the periods in question, routinely made unnecessary use of CTscans

7    incident to conducting pulmonary angiogram procedures.

8    **Mammography Quality Standards Act**

9    33. (a) The U.S. Food and Drug Administration ("FDA"), as a condition of receiving federal

10    funding, requires that qualifying institutions keep annual mammography statistics, pursuant to the

11    Mammography Quality Standards Act ("MQSA"), 42 U.S.C. § 263(b). (b) From October 1, 1994,

12    forward, a certificate issued by the FDA is required for lawful operation of all mammography facilities

13    under the regulatory jurisdiction of the United States, with the exception of the Department of Veterans

14    Affairs. (c) To obtain a certificate from the FDA, facilities are required to meet the quality standards in

15    21 C.F.R. Part 900 et seq. and to be accredited by an approved accreditation body or other entity as

16    designated by FDA. (d) FDA's MQSA was enacted to ensure that all women have access to quality

17    mammography imaging services and breast care. (e) Facilities must become accredited and then

18    certified in order to perform mammography services lawfully. (f) Once certified, facilities must undergo

19    periodic reviews of their clinical images, have an annual survey by a medical physicist, and meet federal

20    quality standards regarding personnel qualifications, equipment, radiation dose, quality assurance

21    programs, and record keeping and reporting. (g) Facilities at least every three years must also undergo

22    an inspection of their mammography practices, conducted by a federally certified inspector.

23    **Mammography Call-backs**

24

25    34. (a) Defendants, during the periods in question, routinely called back mammography

patients to undergo additional diagnostic procedures because of suspicious findings. (b) In

26    mammography, the U.S. Food and Drug Administration ("FDA") requires that statistics be kept on an

27    annual basis, reflecting the percentage of callback statistics per year per radiologist on patients who

28    return for additional procedures because of suspicious findings. (c) The callback norm is 10% per year

or less.  (d) On November 17, 2009, an MCH medical staff peer review quality assurance committee discovered that two radiologists working for SPENCER GROUP had numbers of 47% and 54% – 500% above normal.  (e) This problem was extensively discussed on two occasions in medical staff quality assurance committee meetings in November 2009 and January 2010, and ultimately was referred to the medical executive committee for investigation or discipline.

35.  (a) Surgical statistics in the U.S. for breast biopsy reveal a positive rate of malignancy of 20%.  (b) In order to justify a call back ratio of 54%, the positive rate of breast biopsy would have to climb to 98-99% – 500% above existing numbers.  (c) When DR. DRISCOLL in such time frame raised this anomaly with DR. SPENCER, he responded, "This information is trivial and irrelevant! Don't bother me!"  (d) Subsequently, the medical staff executive committee imposed remedial action on the chief of radiology.  (e) Simultaneously, DR. SPENCER'S privileges in mammography were revoked because of failure to meet educational standards mandated by the FDA.

36.  (a) Patti Duran, R.T., performed all the mammograms that were performed at MCH.  (b) She is the Director of Mammography on the technical side at MCH.  (c) She witnessed the mammography call-backs, where DR. SPENCER routinely sent patients back for more work nowith- standing normal examinations.  (d) She witnessed the ridiculous number of recalls by DR. SPENCER. (e) She also witnessed at least one of DR. SPENCER'S incidents of rage.

### False Certificatoin of Compliance with Applicable Laws and Regulations

37.  Using Federal and State shared Medi-Cal revenues, the Defendants falsely and fraudulently certified compliance with MQSA and other applicable laws and regulations.

### Damages to Taxpayers

38.  Relator claims damages to taxpayers, before trebling and before imposing statutory penalties, as follows:

(a) MCH: $21 million technical charges by MCH and $7 million professional charges by SPENCER GROUP, roughly two-thirds of which was to MediCare and one-third of which was to Medi-Cal;

1  (b) SKDH: $6 million technical charges by SKDH and $2 million professional charges by

2 SPENCER GROUP, roughly two-thirds of which was to MediCare and one-third of which was to

3 Medi-Cal;

4  (c) CCWF: $6 million technical charges by CCWF and $2 million professional charges by

5 SPENCER GROUP, roughly one-third of which was to MediCare and roughly two-thirds to Medi-

6 Cal;

7  (d) VSPW $6 million technical charges by VSPW and $2 million professional charges by

8 SPENCER GROUP, roughly one-third of which was to MediCare and roughly two-thirds to Medi-

9 Cal.

10

11  39. Though no liability lies with CCWF and VSPW for the technical charges made by them,

12 due to their being State of California entities, Relator does claim that DR. SPENCER and the

13 SPENCER GROUP are liable to the United States for such technical charges.

14            **Employment Contract**

15  40. From December 1, 2007, to April 9, 2010, Relator worked for the SPENCER

16 GROUP, at MCH, in Fresno, California, where he was a diagnostic radiologist, doing virtually

17 everything except for radiation therapy – C.T., MRI, ultrasound, general radiology, and interventional

18 radiology, on an out-patient basis.

19  41. (a) Effective October 31, 2007, DR. DRISCOLL and Defendant SPENCER GROUP

20 entered into a so-called "Independent Contractor Agreement" ("Agreement"), a copy of which is

21 attached hereto as Exhibit A. (b) The Agreement called for an initial term extending one year from the

22 date DR. DRISCOLL obtained privileges at MCH, which privileges he obtained on or about

23 December 1, 2007. (c) Relator began work under this Agreement on December 1, 2007. (e) The

24 written Agreement has a clause that renewed its term through a second one-year term, which second

25 term ended December 1, 2009. (f) Notwithstanding the December 1, 2009, expiration of the written

26 Agreement, DR. DRISCOLL continued working for the SPENCER GROUP, pursuant to an implied

27 contract of employment for an undefined term, subject to termination for good cause shown.

28 \\\

42. (a) DR. DRISCOLL satisfactorily and fully performed all obligations required of him by his contract of employment with the SPENCER GROUP. (b) Not a single case of DR. DRISCOLL'S was referred for peer review. (c) During DR. DRISCOLL'S employment with the SPENCER GROUP, he never received any negative performance review or discipline. (d) During his period of employment with the SPENCER GROUP, DR. DRISCOLL, to the point of his April 3, 2010, demotion and his April 10, 2010, employment termination, received no written reprimand, no accusation or finding of malpractice, nor any disciplinary action from SPENCER GROUP, from any of the four subject institutions, or from any professional or regulatory body. (e) Also, during DR. DRISCOLL'S employment with the SPENCER GROUP, there was never any finding of any misconduct by DR. DRISCOLL in his relationships with co-workers. (f) DR. SPENCER'S experience, on the other hand, included four peer review conferences investigating errant mammography statistics and a patient death following diagnostic C.T.-guided biopsy.

43. Implied by law into such employment relationship between DR. DRISCOLL and the SPENCER GROUP was, and is, an implied covenant of good faith and fair dealing.

44. Though the written Agreement signed by DR. DRISCOLL and the SPENCER GROUP was expressly labeled an "independent contractor" the following facts establish that the relationship *in substance* was an employer-employee relationship: (a) the SPENCER GROUP directed, controlled, and supervised DR. DRISCOLL'S work; (b) the SPENCER GROUP required DR. DRISCOLL to work primarily for the SPENCER GROUP; (c) the nature of the services performed by DR. DRISCOLL was such that all such services had to be done at the work premises of the SPENCER GROUP; (d) the SPENCER GROUP determined the sequence of the work; (e) SPENCER GROUP compensated DR. DRISCOLL on a monthly basis; (f) DR. DRISCOLL furnished no tools or equipment; (g) DR. DRISCOLL did not publicly promote himself as an independent contractor; (h) the services provided by DR. DRISCOLL were integral to the work of the SPENCER GROUP; (i) the SPENCER GROUP set DR. DRISCOLL'S working hours; and (j) the SPENCER GROUP reimbursed DR. DRISCOLL for his malpractice insurance, a fringe benefit worth $8,000.00 annually.

\\\

1    45. (a) On April 3, 2010, the SPENCER GROUP effectively demoted DR. DRISCOLL,

2    via having its lawyer's office hand-deliver to DR. DRISCOLL a letter apprising him his hours were

3    being reduced by 50%. (b) Six days later, on April 9, 2010, the SPENCER GROUP terminated DR.

4    DRISCOLL'S employment, via having its lawyer's office hand-deliver to DR. DRISCOLL a letter

5    apprising him his employment was being terminated effective immediately.

6    46. (a) DR. DRISCOLL had a reasonable belief that DR. SPENCER was asking him to be

7    silent relative to violations of the FCA and the CFCA. (b) DR. DRISCOLL'S unwillingness to be silent

8    was a motivating factor that materially and substantially contributed to DR. DRISCOLL'S termination.

9                              **Unpaid Wages Owed to DR. DRISCOLL**

10    47. (a) Rather than contract to compensate DR. DRISCOLL via the flat salary normally

11    accorded a radiologist as a professionally exempt employee, the SPENCER GROUP, via the

12    Agreement, instead expressly contracted with DR. DRISCOLL to compensate him solely *by the hour*.

13    (b) Pursuant to the Agreement, the SPENCER GROUP required DR. DRISCOLL to work only up to

14    20 hours per week on weekdays, with occasional weekend services to be provided per a schedule to

15    he provided by the SPENCER GROUP and on an on-call basis as needed. (c) The Agreement

16    established $170 per hour as the rate of compensation for scheduled hours. (d) Further, the

17    Agreement specifically provided that DR. DRISCOLL would be compensated for additional hours he

18    would be called upon to work, expressly including, but not limited to, weekend and on-call hours.

19    (e) Though the Agreement did not spell out a compensation enhancement for work beyond 20 hours a

20    week, the custom and practice for part-time work for a physician engaged in the practice of medicine,

21    at all times alleged herein, was to compensate the physician at the rate of time-and-a-half for hours

22    above and beyond those contracted.

23    48. (a) From the start of DR. DRISCOLL'S employment to its conclusion, the SPENCER

24    GROUP had DR. DRISCOLL work at least 30 hours per weekday week rather than the 20 hours

25    contemplated by the Agreement. (b) Nonetheless, the SPENCER GROUP compensated DR.

26    DRISCOLL for only 20 hours per week, and did not compensate DR. DRISCOLL for such extra time

27    he routinely was working. (c) All the while, the SPENCER GROUP, and its principal, DR.

28    SPENCER, knew of, approved, and took advantage of, DR. DRISCOLL's willingness to work extra

United States and State of California *ex rel.* Scott Driscoll. v. Todd Spencer M.D. Medical Group Inc., et al.                -16-

1   hours that DR. SPENCER determined were needed. (d) DR. SPENCER frequently was in the
2   presence of DR. DRISCOLL as he worked at the outpatient department or hospital after 12;30 p.m.,
3   always to at least 2:30 p.m. or 3:00 p.m., frequently 4:30 p.m., and, rarely, 5:00 p.m. to 6:00 p.m. at
4   night. (e) On a typical day, at 12:30 p.m. in the afternoon, the hour by which DR. DRISCOLL's 8:30
5   a.m. – 12:30 p.m. workday normally was supposed to be ending, DR. SPENCER would bring to DR.
6   DRISCOLL a pile of work and order him to finish it before DR. DRISCOLL would be permitted to
7   leave for the day. (f) Throughout the period of DR. DRISCOLL'S work with the SPENCER GROUP,
8   Relator DR. DRISCOLL frequently complained to DR. SPENCER that the SPENCER GROUP was
9   failing to compensate DR. DRISCOLL for the extra time he was working. (g) DR. DRISCOLL
10  repeatedly communicated to DR. SPENCER that the volume of work and the patients' needs for
11  prompt medical care made it necessary that DR. DRISCOLL work such extra hours. (h) While DR.
12  SPENCER at times would remark to DR. DRISCOLL that he was a good worker for staying late, DR.
13  SPENCER refused to pay DR. DRISCOLL for such extra hours, and often would communicate his
14  refusal in a visibly angry way.

15      49. (a) *In toto*, the SPENCER GROUP failed and refused to pay DR. DRISCOLL for an
16  average of ten (10) hours of extra work per week, approximately 48 weeks per year, for approxi-
17  mately 2½ years – a total of approximately 120 weeks or 1,200 hours. (b) At $170 per hour, DR.
18  SPENCER and the SPENCER GROUP owe to DR. DRISCOLL approximately $204,000 in unpaid
19  wages (1200 hours x $170). (c) If an enhanced time-and-a-half rate of $255 per hour is applied, DR.
20  SPENCER and the SPENCER GROUP owe to DR. DRISCOLL approximately $306,000 in unpaid
21  wages (1200 hours x $255).

22                    **Adverse Employment Actions Against DR. DRISCOLL**

23      50. The "Madera Community Hospital Document of Compliance," applicable to DR.
24  DRISCOLL, DR. SPENCER, and all other members of the MCH campus, as a condition of their
25  working there, encouraged all members to blow the whistle on unlawful conduct and pledged a policy
26  of protecting whistleblowers from retribution or retaliation.

27      51. DR. SPENCER and the SPENCER GROUP engaged in a campaign of retaliatory
28  adverse employment actions against DR. DRISCOLL, materially affecting the terms and conditions of

1    his employment, in the form of: (a) special scrutiny, coercion, and intimidation incident to communi-

2    cating that allegations of billing fraud would not be tolerated and that demands for compensation for

3    extra hours worked would not be tolerated; (b) verbal assaults on six different occasions, creating a

4    genuine appearance that DR. SPENCER'S episodes of rage against DR. DRISCOLL would extend to

5    imminent physical attack; (c) repeated wilful refusals to compensate DR. DRISCOLL for extra hours

6    he worked; (d) an April 3, 2010, memo communicating a reduction in DR. DRISCOLL'S working

7    hours by more than half, effectively demoting him; (e) an April 9, 2010, memo terminating DR.

8    DRISCOLL'S employment; (f) correspondence threatening litigation against DR. DRISCOLL if he

9    were to persist in making accusations of fraudulent billing practices; and (g) the August 8, 2011, filing

10    and prosecution of a civil lawsuit against DR. DRISCOLL titled *Todd Spencer M.D. Medical Group,*

11    *Inc. and Todd Spencer, M.D. v. Scott M. Driscoll, M.D.,* Madera Superior Court Case No.

12    MCV057183, alleging DR. DRISCOLL should pay DR. SPENCER and SPENCER MEDICAL

13    GROUP damages allegedly accruing from alleged accusations of fraudulent billing practices, which

14    accusations DR. SPENCER and SPENCER MEDICAL GROUP attribute solely to DR. DRISCOLL

15    as the source.

16        52. (a) On or about six different occasions, in response to DR. DRISCOLL'S request for

17    payment for his extra hours that had to be worked for the patients, DR. SPENCER angrily yelled to

18    DR. DRISCOLL "You're fired!" (b) After two such "You're fired!" events, DR. SPENCER called

19    DR. DRISCOLL apologized and retracted his statement. (c) After the other "You're fired!" events,

20    DR. SPENCER simply accepted DR. DRISCOLL returning to work. (d) DR. SPENCER'S conduct

21    in attempting to coerce, intimidate, and humiliate DR. DRISCOLL constituted intentional infliction of

22    emotional distress so outrageous and uncivil as to be beyond the level a similarly situated reasonable

23    person should have to tolerate. (e) DR. DRISCOLL'S notes regarding one incident in particular reveal

24    DR. SPENCER as a poster boy for the supervisor unable to control fits of rage: "I could see dilated

25    veins on his forehead and his eyeballs. His nostrils were flared, his lips curled, and his teeth bared. My

26    instinct was to escape, but I laughed because the enraged physician was a caricature of an angry man."

27    \\\

28    \\\

| | |
|---|---|
| 1 | **Motivating Factors behind Adverse Action Taken Against Dr. Driscoll** |
| 2 | 53. There were two substantial and primary contributing motivating factors behind |
| 3 | SPENCER GROUP'S adverse action taken against DR. DRISCOLL: (a) DR. DRISCOLL'S |
| 4 | demands to be compensated for excess hours worked; (b) DR. DRISCOLL'S complaints about billing |
| 5 | practices that he deemed to be fraudulent to Medicare and Medi-Cal. (c) Both these complaints were |
| 6 | protected activity. |
| 7 | **Pre-Filing Confidential Disclosure by Relator** |
| 8 | 54. Prior to filing this sealed complaint, Relator DR. DRISCOLL, in compliance with the |
| 9 | FCA and the CFCA, confidentially disclosed underlying facts to the United States Department of |
| 10 | Justice and to the State of California Office of Attorney General. |
| 11 | |
| 12 | **FIRST CAUSE OF ACTION:** |
| 13 | **KNOWINGLY CAUSED A FALSE OR FRAUDULENT CLAIM TO BE PRESENTED IN VIOLATION OF THE FALSE CLAIMS ACT,** |
| 14 | **31 U.S.C. § 3729(a)(1)(A), AGAINST ALL DEFENDANTS** |
| 15 | 55. Relator re-alleges, and fully incorporates herein by reference, paragraphs 1-18, 21-41, |
| 16 | 46, and 54. |
| 17 | 56. In performing the acts particularly set forth above, Defendants TODD SPENCER, M.D., |
| 18 | TODD SPENCER M.D. MEDICAL GROUP, INC., MADERA COMMUNITY HOSPITAL, and |
| 19 | SIERRA KINGS DISTRICT HOSPITAL defrauded the United States of America, by knowingly |
| 20 | presenting, or causing to be presented, to one or more officers or employees of the United States of |
| 21 | America, a false and fraudulent claim for approval or payment for Medi-Cal, with an implied |
| 22 | certification of compliance with all Federal eligibility laws, in contravention of the Federal False Claims |
| 23 | Act (31 U.S.C. § 3729(a)(1)(A)), to the damage of the treasury of the United States of America, by |
| 24 | causing the United States to pay out money it is not obligated to pay. |
| 25 | 57. (a) As a direct and proximate result of such false and fraudulent claims in violation of 31 |
| 26 | U.S.C. § 3729(a)(1)(A), there were at least 34,500 instances of which were unnecessary. (b) There |
| 27 | were at least 34,500 instances in which federal MediCare funds were so expended for work by |
| 28 | Defendants at MCH, and there were at least 29,000 examination instances in which federal MediCare |

1    funds were expended for work by Defendants SIERRA KINGS DISTRICT HOSPITAL. (c) Each

2    and every one of these instances constituted a separate false or fraudulent claim to the United States

3    treasury. (d) Aside from the per-incident penalties, and before trebling, the amount of damages so

4    sustained by the United States is in excess of $26 million.

### SECOND CAUSE OF ACTION:

#### KNOWINGLY MADE, USED, OR CAUSED TO BE MADE OR USED, A FALSE RECORD OR STATEMENT MATERIAL TO A FALSE OR FRAUDULENT CLAIM, IN VIOLATION OF THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3729(a)(1)(B) AGAINST ALL DEFENDANTS

10   58. Relator re-alleges, and fully incorporates herein by reference, paragraphs 1-18, 21-41,

11   46, and 54.

12   59. By virtue of the particular acts described above, Defendants TODD SPENCER, M.D.,

13   TODD SPENCER M.D. MEDICAL GROUP, INC., MADERA COMMUNITY HOSPITAL, and

14   SIERRA KINGS DISTRICT HOSPITAL knowingly made, used, or caused to made or used a false

15   or fraudulent record or a false or fraudulent statement material to getting a false or fraudulent claim paid

16   or approved by the United States of America, in contravention of the Federal False Claims Act (31

17   U.S.C. § 3729(a)(1)(B)) to the damage of the Treasury of the United States of America, by causing it

18   to pay out money it was not obligated to pay.

19   60. (a) As a direct and proximate result of such false claims in violation of 31 U.S.C. §

20   3729(a)(1)(B), which expenditures were unreasonable, inappropriate, and unnecessary. (b) There

21   were at least 34,500 instances in which federal MediCare funds were so expended for work by

22   Defendants at MCH, and there were at least 29,000 examination instances in which federal MediCare

23   funds were expended for work by Defendants SIERRA KINGS DISTRICT HOSPITAL. (c) Each

24   and every one of these instances constituted a separate false or fraudulent claim to the United States

25   treasury. (d) Aside from the per-incident penalties, and before trebling, the amount of damages so

26   sustained by the United States is in excess of $26 million, as broken down above.

27   \\\

28   \\\

**THIRD CAUSE OF ACTION:**

**CONSPIRACY TO DEFRAUD THE UNITED STATES BY GETTING A FALSE OR FRAUDULENT CLAIM ALLOWED OR PAID IN VIOLATION OF 31 U.S.C. § 3729(a)(1)(C), AGAINST ALL DEFENDANTS**

61. Relator re-alleges, and fully incorporates herein by reference, paragraphs 1-18, 21-41, 46, and 54.

62. By performing the particular acts set forth above, Defendant hospitals MADERA COMMUNITY HOSPITAL and SIERRA KINGS DISTRICT HOSPITAL each separately conspired with Defendants TODD SPENCER, M.D., and TODD SPENCER M.D. MEDICAL GROUP, INC. to get false and fraudulent claims allowed and paid by the United States.

63. (a) As a direct and proximate result of such conspiracy in violation of 31 U.S.C. § 3729(a)(1)(C), there were damages to the United States Treasury as set forth above. (b) There were at least 34,500 instances in which MediCare funds were so expended for work by Defendants at MCH, and there were at least 29,000 examination instances in which MediCare funds were expended for work by Defendant SKDH, which expenditures were unreasonable, inappropriate, and unnecessary. (c) Each and every one of the instances of unbundling, overbilling, and ordering unnecessary procedures constituted a separate false claim to the United States. (d) Aside from per-incident penalties, and before trebling, the amount of damages so sustained by the United States is in excess of $26 million for such period, as broken down above.

**FOURTH CAUSE OF ACTION:**

**KNOWINGLY CAUSING A FALSE CLAIM TO BE PRESENTED IN VIOLATION OF THE CALIFORNIA FALSE CLAIMS ACT, CAL. GOV. C. § 12651(a)(1), AGAINST ALL DEFENDANTS**

64. Relator re-alleges, and fully incorporates herein by reference, paragraphs 1-41, 46, and 54.

65. By virtue of the acts particularly described above, Defendants TODD SPENCER, M.D., TODD SPENCER M.D. MEDICAL GROUP, INC., MADERA COMMUNITY HOSPITAL, and SIERRA KINGS DISTRICT HOSPITAL have knowingly made, used, or caused to be made or used, a false claim to get a false or fraudulent claim paid or approved by the State of California, in

1 | contravention of the California False Claims Act (Cal. Gov. C. § 12651(a)(1)), to the damage of the

2 | State of California, by causing it to pay out money it was not obligated to pay.

3 | 66. (a) As a direct and proximate result of such false claims in violation of Cal. Gov. C. §

4 | 12651(a)(1), there were at least 34,500 instances in which State of California funds were so expended

5 | for work by Defendants at MCH, and there were at least 29,000 examination instances in which State

6 | of California funds were expended for work by Defendants SIERRA KINGS DISTRICT HOSPITAL,

7 | which expenditures were unreasonable, inappropriate, and unnecessary. (b) Each and every one of

8 | these instances constituted a separate false or fraudulent claim to the State of California treasury. (c)

9 | Aside from per-incident penalties, and before trebling, the amount of damages so sustained by the State

10 | of California is in excess of $26 million for such period, as broken down above.

11 | .

12 | **FIFTH CAUSE OF ACTION:**

13 | **KNOWING SUBMISSION OF FALSE RECORD TO OBTAIN PAYMENT OF A FALSE OR FRAUDULENT CLAIM IN VIOLATION OF THE CALIFORNIA FALSE**
14 | **CLAIMS ACT, CAL. GOV. C. § 12651(a)(2), AGAINST ALL DEFENDANTS**

15 | 67. Relator re-alleges, and fully incorporates herein by reference, paragraphs 1-41, 46, and

16 | 54.

17 | 68. By virtue of the acts particularly described above, Defendants TODD SPENCER, M.D.,

18 | TODD SPENCER M.D. MEDICAL GROUP, INC., MADERA COMMUNITY HOSPITAL, and

19 | SIERRA KINGS DISTRICT HOSPITAL have knowingly made, used, or caused to be made or used

20 | a false record or statement to get a false claim paid or approved by the State of California, in

21 | contravention of the California False Claims Act (Cal. Gov C. § 12651(a)(2)), to the damage of the

22 | Treasury of the State of California, by causing it to pay out money it was not obligated to pay.

23 | 69. (a) As a direct and proximate result of such false claims in violation of Cal. Gov C. §

24 | 12651(a)(2), there were at least 34,500 instances in which State of California funds were so expended

25 | for work by Defendants at MCH, and there were at least 29,000 examination instances in which State

26 | of California funds were expended for work by Defendants SIERRA KINGS DISTRICT HOSPITAL.

27 | (b) Each and every one of these instances constituted a separate false or fraudulent claim to the State of

28 | California treasury. (c) Aside from per-incident penalties, and before trebling, the amount of damages

1 │ so sustained by the State of California is in excess of $26 million for such period, as broken down

2 │ above.

3

4 │ ## SIXTH CAUSE OF ACTION:

5 │ **CONSPIRACY TO DEFRAUD THE STATE OF CALIFORNIA BY GETTING A
   │ FALSE OR FRAUDULENT CLAIM ALLOWED OR PAID IN VIOLATION
6 │ OF CAL. GOV. CODE § 12651(a)(3), AGAINST ALL DEFENDANTS**

7 │ 70. Relator re-alleges, and fully incorporates herein by reference, paragraphs 1-41, 46, and

8 │ 54.

9 │ 71. Defendant hospitals MADERA COMMUNITY HOSPITAL and SIERRA KINGS

10 │ DISTRICT HOSPITAL each separately conspired with the Defendants TODD SPENCER, M.D.,

11 │ and TODD SPENCER M.D. MEDICAL GROUP, INC. to get the above-referenced false and

12 │ fraudulent claims allowed and paid by the State of California.

13 │ 72. (a) As a direct and proximate result of each such conspiracy, the State of California

14 │ sustained damages, in the nature of State of California funds expended for unnecessary procedures,

15 │ improperly bundled procedures, and over-billed procedures. (b) There were at least 34,500 instances

16 │ in which State of California funds were so expended for work by Defendants at MCH, and there were

17 │ at least 29,000 examination instances in which State of California funds were expended for work by

18 │ Defendants SIERRA KINGS DISTRICT HOSPITAL. (c) Each and every one of these instances

19 │ constituted a separate false or fraudulent claim to the State of California. (d) Aside from per-incident

20 │ penalties, and before trebling, the amount of damages so sustained by the State of California is in

21 │ excess of $26 million for the subject period, as broken down above.

22

23 │ ## SEVENTH CAUSE OF ACTION:

24 │ **FAILURE OF BENEFICIARIES OF FALSE CLAIMS TO DISCLOSE
   │ FALSE CLAIMS, IN VIOLATION OF CAL. GOV. CODE
25 │ § 12651(a)(8), AGAINST ALL DEFENDANTS**

26 │ 73. Relator re-alleges, and fully incorporates herein by reference, paragraphs 1-41, 46, and

27 │ 54.

28 │ \\\

74. If, notwithstanding the facts alleged above, the finder of fact determines that any Defendant's submission of the above-referenced false claims to the State of California was inadvertent, rather than knowing, the California False Claims Act, at Cal. Gov. C. § 12651(a)(8), imposes liability upon the beneficiary of an inadvertent submission of a false claim to the state or political subdivision, where such beneficiary subsequently discovers the falsity of the claim, and fails to disclose the false claim to the state or the political subdivision within a reasonable time after discovery of the false claim.

75. In such circumstance, Defendants DR. SPENCER, SPENCER GROUP, MADERA COMMUNITY HOSPITAL and SIERRA KINGS DISTRICT HOSPITAL, respectively, each discovered the falsity of the subject claims, yet failed to disclose such falsity to the State of California within a reasonable time after discovery.

76. (a) As a direct and proximate result of the subject Defendants' failure to disclose to the State of California the Defendants' false claims, the State of California sustained damages, in the nature of State of California funds expended. (b) During the applicable time period, there were at least 34,500 examination instances in which State of California funds were expended for SPENCER GROUP radiology services at MADERA COMMUNITY HOSPITAL, and there were at least 29,000 examination instances in which State of California funds were expended for SIERRA KINGS DISTRICT HOSPITAL. (c) Each and every one of these instances constituted a separate false or fraudulent claim to the State of California. (d) Aside from per-incident penalties, and before trebling, the amount of damages so sustained by the State of California is in excess of $26 million for the subject period, as broken down above.

## EIGHTH CAUSE OF ACTION:

### RETALIATION IN VIOLATION OF 31 U.S.C. § 3730(h), AGAINST DEFENDANTS TODD SPENCER, M.D., AND TODD SPENCER M.D. MEDICAL GROUP, INC.

77. Relator re-alleges, and fully incorporates herein by reference, paragraphs 1-9, 11-37, and 40-53.

78. The False Claims Act, at 31 U.S.C. § 3730(h) provides the following relief from retaliatory actions:

1
2
3
4
5

      (1) In general. Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

      (2) Relief. Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An action under this subsection may be brought in the appropriate district court of the United States for the relief provided in this subsection.

6
7
8
9

10    79. (a) Relator DR. DRISCOLL, in close proximity in time to his demotion and termination,

11  was engaging in protected activity, speaking out against what he in good faith believed to be MediCare

12  and Medi-Cal billing fraud by the SPENCER GROUP, a belief that reasonable employee in the same

13  or similar circumstances might have. (b) His employer, DR. SPENCER, doing business as the

14  SPENCER GROUP, knew that DR. DRISCOLL was engaged in such protective activity.

15    80. Retaliatory acts by DR. SPENCER and the SPENCER GROUP included: (a) Coercive

16  and intimidating communications of a policy that allegations of fraud are not tolerated; (b) an April 3,

17  2010, memo communicating a reduction in DR. DRISCOLL'S working hours by more than half,

18  effectively demoting him; (c) an April 9, 2010, memo terminating DR. DRISCOLL'S employment;

19  (d) threats to bring legal action against DR. DRISCOLL over his allegations; (e) the filing and

20  prosecution of a state court action against DR. DRISCOLL.

21    81. (a) Relator DR. DRISCOLL, in close proximity in time to his demotion and termination,

22  was engaging in protected activity, speaking out against what he in good faith believed to be MediCare

23  and Medi-Cal billing fraud by the SPENCER GROUP, a belief that reasonable employee in the same

24  or similar circumstances might have. (b) His employer, DR. SPENCER, doing business as the

25  SPENCER GROUP, knew that DR. DRISCOLL was engaged in such protective activity. (c) A

26  substantial contributing motivating factor behind SPENCER GROUP'S harassment and intimidation of

27  DR. DRISCOLL, and the SPENCER GROUP'S demotion of DR. DRISCOLL and termination of

28  DR. DRISCOLL'S employment, was the SPENCER GROUP'S knowledge that DR. DRISCOLL

1    was engaged in such protective activity.  (d) In close proximity to demoting DR. DRISCOLL'S hours

2    and terminating DR. DRISCOLL'S employment, the SPENCER GROUP knew that DR. DRISCOLL

3    was protesting matters that are calculated, or reasonably could lead, to viable FCA claims.

4         82.  By virtue of the acts described above, Defendants DR. SPENCER and the SPENCER

5    GROUP knowingly, wilfully, and recklessly interfered with DR. DRISCOLL'S effort to stop the

6    SPENCER GROUP'S conduct in violation of the FCA, and wrongfully retaliated against him in his

7    employment, in violation of 31 U.S.C. § 3730(h).

8         83.  As a direct and proximate result of such retaliation in violation of § 3730(h), Relator DR.

9    DRISCOLL individually suffered special damages, including, but not limited to, lost wages and benefits.

10   The amount of such damages has not yet been fully ascertained and is subject to proof at trial; however,

11   such damages are in excess of this Court's jurisdictional limits

12        84.  As a further legal result of such wrongful conduct in violation of § 3730(h), Relator DR.

13   DRISCOLL has individually suffered general damages, including injury to his reputation; and as a legal

14   result of such conduct Plaintiff has experienced, and continues to experience, tremendous embarrass-

15   ment, humiliation, mortification, anguish and distress for which he is entitled to recover damages in a

16   sum subject to proof at trial

17        85.  As a further result of such wrongful conduct in violation of §3730(h), Relator DR.

18   DRISCOLL is entitled to all relief necessary to make him whole, including reinstatement with the same

19   seniority status that he would have had but for the discrimination, double damages, back pay, interest

20   on back pay, and compensation for any special damage sustained as a result of the retaliation.

21        86.  As a further result of such retaliation in violation of Section 3730(h), because the

22   referenced conduct by DR. SPENCER and the SPENCER GROUP was knowing, wilful, and tainted

23   by malice, DR. DRISCOLL is entitled to punitive damages, to the extent such exceed double damages.

24

25                    **NINTH CAUSE OF ACTION:**

26   **RETALIATION IN VIOLATION OF CAL. GOV. C. § 12653,**
     **AGAINST DEFENDANTS TODD SPENCER, M.D., AND**
27   **TODD SPENCER M.D. MEDICAL GROUP, INC.**

28   \\\

87. Relator re-alleges, and fully incorporates herein by reference, paragraphs 1-9, 11-37, and 40-53.

88. Cal. Gov. C. §12653(a)-(b) states as follows:

(a) No employer shall make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency or from acting in furtherance of a false claims action, including investigating, initiating, testifying, or assisting in an action filed or to be filed under Section 12652.

(b) No employer shall discharge, demote, suspend, threaten, harass, deny promotion to, or in any other manner discriminate against, an employee in the terms and conditions of employment because of lawful acts done by the employee on behalf of the employee or others in disclosing information to a government or law enforcement agency or in furthering a false claims action, including investigation for, initiation of, testimony for, or assistance in, an action filed or to be filed under Section 12652.

89. Retaliatory acts by DR. SPENCER and the SPENCER GROUP included: (a) Coercive and intimidating communications of a policy that allegations of fraud are not tolerated; (b) repeated willful and angry refusals to compensate DR. DRISCOLL for extra hours worked; (c) an April 3, 2010, memo communicating a reduction in DR. DRISCOLL'S working hours by more than half, effectively demoting him; (d) an April 9, 2010, memo terminating DR. DRISCOLL'S employment; (e) threats to bring legal action against DR. DRISCOLL over his allegations; and (f) the filing and prosecution of a state court action against DR. DRISCOLL.

90. (a) Relator DR. DRISCOLL, in close proximity in time to his demotion and termination, was engaging in protected activity, speaking out against what he in good faith believed to be MediCare and Medi-Cal billing fraud by DR. SPENCER and the SPENCER GROUP, a belief that reasonable employee in the same or similar circumstances might have. (b) His employer, DR. SPENCER, doing business as the SPENCER GROUP, knew that DR. DRISCOLL was engaged in such protective activity. (c) A substantial contributing motivating factor behind the SPENCER GROUP'S harassment and intimidation of DR. DRISCOLL, and the SPENCER GROUP'S demotion of DR. DRISCOLL and termination of DR. DRISCOLL'S employment, was the SPENCER GROUP'S knowledge that DR. DRISCOLL was engaged in such protective activity. (d) In close proximity to demoting DR.

\\\

\\\

1  DRISCOLL'S hours and terminating DR. DRISCOLL'S employment, the SPENCER GROUP knew

2  that DR. DRISCOLL was protesting matters that are calculated, or reasonably could lead, to viable

3  CFCA claims.

4  91. By virtue of the acts described above, Defendants DR. SPENCER and the SPENCER

5  GROUP knowingly, wilfully, and recklessly interfered with Relator DR. DRISCOLL'S investigation

6  and disclosure of Defendants' false claims, and wrongfully retaliated against him in his employment, in

7  violation of Cal. Gov. C. §12653(a)-(b).

8  92. As a legal result of such wrongful conduct in violation of Cal. Gov. C. §12653, Relator

9  DR. DRISCOLL has individually suffered special damages, including, but not limited to, lost wages and

10  benefits. The amount of such damages has not yet been fully ascertained and is subject to proof at trial;

11  however, such damages are in excess of this Court's jurisdictional limits.

12  93. As a further legal result of such wrongful conduct in violation of Cal. Gov. C. §12653,

13  DR. DRISCOLL has individually suffered general damages, including injury to his reputation; and as a

14  legal result of such conduct Plaintiff has experienced, and continues to experience, tremendous

15  embarrassment, humiliation, mortification, anguish and distress for which he is entitled to recover

16  damages in a sum subject to proof at trial.

17  94. As a further result of such wrongful conduct in violation of Cal. Gov. C. §12653, DR.

18  DRISCOLL is entitled to all relief necessary to make him whole, including reinstatement with the same

19  seniority status that he would have had but for the discrimination, two times the amount of back pay,

20  interest on the back pay, compensation for any special damage sustained as a result of the

21  discrimination.

22  95. As a further result of such retaliation in violation of Cal. Gov. C. §12653, because the

23  referenced conduct by DR. SPENCER and the SPENCER GROUP was knowing, wilful, and tainted

24  by malice, DR. DRISCOLL is entitled to punitive damages, to the extent such exceed double damages.

25

26  ## TENTH CAUSE OF ACTION:

27  ### RETALIATION IN VIOLATION OF CAL. LAB. C. § 1102.5
### AGAINST DEFENDANTS TODD SPENCER, M.D., AND

28  ### TODD SPENCER M.D. MEDICAL GROUP, INC.

96. Relator re-alleges, and fully incorporates herein by reference, paragraphs 1-9, 11-37, and 40-53.

97. Cal. Lab. C. § 1102.5 reads, in pertinent part, as follows:

> (a) An employer may not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

> (b) An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

> (c) An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

98. (a) By virtue of the adverse actions set forth in the preceding paragraphs, Defendants DR. SPENCER and the SPENCER GROUP engaged in retaliation in violation of Cal. Lab. C. § 1102.5(a)-(c). (a) Defendants DR. SPENCER and the SPENCER GROUIP knowingly, wilfully, and recklessly interfered with Relator DR. DRISCOLL'S investigation and disclosure of Defendants' false claims, and wrongfully retaliated against him in his employment, in violation of Section 1102.5.

99. As a direct and proximate result of such retaliation in violation of Section 1102.5 Relator DR. DRISCOLL individually suffered special damages, including, but not limited to, lost wages and benefits. The amount of such damages has not yet been fully ascertained and is subject to proof at trial; however, such damages are in excess of this Court's jurisdictional limits.

100. As a further legal result of such wrongful conduct in violation of Section 1102.5, Relator DR. DRISCOLL has individually suffered general damages, including injury to his reputation; and as a legal result of such conduct Plaintiff has experienced, and continues to experience, tremendous embarrassment, humiliation, mortification, anguish and distress for which he is entitled to recover damages in a sum subject to proof at trial.

101. As a further result of such wrongful conduct in violation of Section 1102.5, Relator DR. DRISCOLL is entitled to all relief necessary to make him whole, including reinstatement with the same

1    seniority status that he would have had but for the discrimination, two times the amount of back pay,

2    interest on the back pay, and compensation for any special damage sustained as a result of the

3    retaliation.

4    102. As a further result of such retaliation in violation of Section 1102.5, because the

5    referenced conduct by DR. SPENCER and the SPENCER GROUP was knowing, wilful, and tainted

6    by malice, DR. DRISCOLL is entitled to punitive damages, to the extent such exceed any award of

7    double damages.

### ELEVENTH CAUSE OF ACTION:

### RETALIATION IN VIOLATION OF CAL. BUSINESS & PROFESSIONS C. § 2056, AGAINST DEFENDANTS TODD SPENCER, M.D., AND TODD SPENCER M.D. MEDICAL GROUP, INC.

103. Relator re-alleges, and fully incorporates herein by reference, paragraphs 1-9, 11-37, and 40-53.

104. (a) California law provides "protection against retaliation for physicians who advocate for medically appropriate health care for their patients . . . ." (Cal. Bus. & Prof. Code, § 2056, subd. (a). ) (b) Section 2056(a) prohibits retaliation against a physician over such physician's protest a decision or policy that the physician reasonably believes impairs his ability to provide medically appropriate care to patients. (c) The SPENCER GROUP'S denial of DR. DRISCOLL'S demands for payment of compensation constituted a violation of Cal. Bus. & Prof. Code, § 2056(a). (d) When DR. DRISCOLL asked the SPENCER GROUP to pay him for the extra work, he frequently asserted to DR. SPENCER that DR. DRISCOLL was doing the extra work to ensure that patients who needed prompt care did not have their care delayed. (e) DR. DRISCOLL'S protests demanding payment for extra hours worked were protected by such Section 2056(a).

105. (a) By virtue of the adverse actions set forth in the preceding paragraphs, Defendants DR. SPENCER and the SPENCER GROUP engaged in retaliation in violation of Cal. Bus. & Prof. Code, § 2056(a). (b) Defendants DR. SPENCER and the SPENCER GROUP knowingly, wilfully, and recklessly impaired DR. DRISCOLL'S ability to provide medically appropriate care to patients. interfered with DR. DRISCOLL'S work for patients, and wrongfully retaliated against him in his employment, in violation of Secttion 2056(a).

106. As a direct and proximate result of such retaliation in violation of Section 2056(a), Relator DR. DRISCOLL individually suffered special damages, including, but not limited to, lost wages and benefits. The amount of such damages has not yet been fully ascertained and is subject to proof at trial; however, such damages are in excess of this Court's jurisdictional limits.

107. As a further legal result of such wrongful conduct in violation of Section 2056(a), Relator DR. DRISCOLL has individually suffered general damages, including injury to his reputation; and as a legal result of such conduct Plaintiff has experienced, and continues to experience, tremendous embarrassment, humiliation, mortification, anguish and distress for which he is entitled to recover damages in a sum subject to proof at trial.

108. As a further result of such wrongful conduct in violation of Section 2056(a), Relator DR. DRISCOLL is entitled to all relief necessary to make him whole, including reinstatement with the same seniority status that he would have had but for the discrimination, two times the amount of back pay, interest on the back pay, compensation for any special damage sustained as a result of the retaliation.

109. As a further result of such retaliation in violation of Section 2056(a), because the referenced conduct by DR. SPENCER and the SPENCER GROUP was knowing, wilful, and tainted by malice, DR. DRISCOLL is entitled to punitive damages, to the extent such exceed any award of double damages.

## TWELFTH CAUSE OF ACTION:

### RETALIATION IN VIOLATION OF CAL. HEALTH & SAFETY C. § 1278.5, AGAINST DEFENDANTS TODD SPENCER, M.D., AND TODD SPENCER M.D. MEDICAL GROUP, INC.

110. Relator re-alleges, and fully incorporates herein by reference, paragraphs 1-9, 11-37, and 40-53.

111. California law declares that it is the public policy of the State of California to encourage patients, nurses, members of the medical staff, and other health care workers to notify government entities of suspected unsafe patient care and conditions, in order to protect patients and in order to

\\\

1    assist those accreditation and government entities charged with ensuring that health care is safe. (Cal.

2    Health & Safety Code, § 1278.5.)

3        112. Cal. Health & Safety Code § 1278.5, subdivision (b), provides, in pertinent part:

4          (1) No health facility shall discriminate or retaliate, in any manner, against any patient, employee, member of the medical staff, or any

5          other health care worker of the health facility because that person has done either of the following:

6

7          (A) Presented a grievance, complaint, or report to the facility, to an entity or agency responsible for accrediting or evaluating the facility, or the medical staff of the facility, or to any other governmental entity.

8

9          (B) Has initiated, participated, or cooperated in an investigation or administrative proceeding related to, the quality of care, services, or conditions at the facility that is carried out by an entity or agency

10          responsible for accrediting or evaluating the facility or its medical staff, or governmental entity.

11

12          (2) No entity that owns or operates a health facility, or which owns or operates any other health facility, shall discriminate or retaliate against any person because that person has taken any actions pursuant to this

13          subdivision.

14        113. (a) DR. DRISCOLL'S above-referenced protests against, and communications about,

15    the SPENCER GROUP'S above-referenced practices of unbundling, overbilling, and ordering

16    unnecessary medical procedures constituted conduct protected by such Section 1278.5. (b) DR.

17    DRISCOLL engaged in the protected conduct described in Cal. Health & Safety Code § 1278.5,

18    subsection (b)(1)(A) and (b)(1)(B).

19        114. (a) By virtue of the adverse actions against DR. DRISCOLL as set forth in the

20    preceding paragraphs, Defendants DR. SPENCER and the SPENCER GROUP engaged in retaliation

21    in violation of Cal. Health & Safety Code § 1278.5. (b) Defendants DR. SPENCER and the

22    SPENCER GROUP knowingly, willfully, and recklessly impaired DR. DRISCOLL'S ability to provide

23    medically appropriate care to patients. interfered with DR. DRISCOLL'S work for patients, and

24    wrongfully retaliated against him in his employment, in violation of Section 1278.5.

25        115. As a direct and proximate result of such retaliation in violation of Section 1278.5,

26    Relator DR. DRISCOLL individually suffered special damages, including, but not limited to, lost wages

27    and benefits. The amount of such damages has not yet been fully ascertained and is subject to proof at

28    trial; however, such damages are in excess of this Court's jurisdictional limits.

1  116. As a further legal result of such wrongful conduct in violation of Section 1278.5, Relator

2 DR. DRISCOLL has individually suffered general damages, including injury to his reputation; and as a

3 legal result of such conduct Plaintiff has experienced, and continues to experience, tremendous

4 embarrassment, humiliation, mortification, anguish and distress for which he is entitled to recover

5 damages in a sum subject to proof at trial.

6  117. As a further result of such wrongful conduct in violation of Section 1278.5, Relator DR.

7 DRISCOLL is entitled to all relief necessary to make him whole, including reinstatement with the same

8 seniority status that he would have had but for the discrimination, interest on the back pay, compensa-

9 tion for any special damage sustained as a result of the retaliation, and legal costs.

10  118. As a further result of such retaliation in violation of Section 1278.5, because the

11 referenced conduct by DR. SPENCER and the SPENCER GROUP was knowing, wilful, and tainted

12 by malice, DR. DRISCOLL is entitled to punitive damages, to the extent such exceed any award of

13 double damages.

14

15          **THIRTEENTH CAUSE OF ACTION:**

16  **FAILURE AND REFUSAL TO PAY WAGES, IN VIOLATION OF CAL. LAB. C.**
    **§§ 201 AND 203, AGAINST DEFENDANTS TODD SPENCER, M.D., AND**
17      **TODD SPENCER M.D. MEDICAL GROUP, INC.**

18  119. Relator re-alleges, and fully incorporates herein by reference, paragraphs 1-9, 11-37,

19 and 40-53.

20  120. Pursuant to Cal. Lab. C. § 201, if an employer discharges an employee, the wages

21 earned and unpaid at the time of discharge are due and payable immediately.

22  121. Pursuant to Cal. Lab. C. § 203, if an employer willfully fails to pay, without abatement

23 or reduction, in accordance with Sections 201, any wages of an employee who is discharged, the

24 wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid

25 or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

26  122. (a) As set forth above, DR. SPENCER and the SPENCER GROUP owe to DR.

27 DRISCOLL approximately $204,000 in unpaid wages (1200 hours x $170). (b) If an enhanced time-

28 and-a-half rate of $255 per hour is applied, DR. SPENCER and the SPENCER GROUP owe to DR.

DRISCOLL approximately $306,000 in unpaid wages (1200 hours x $255). (c) Defendants the SPENCER GROUP and DR. SPENCER were obligated to pay to DR. DRISCOLL all unpaid wages within 24 hours of the April 9, 2010, date of termination of his employment. (d) In addition, such Defendants owe to DR. DRISCOLL the penalty of 30-days continued wages, statutory interest, and all other appropriate relief.

123. As a direct and proximate result of the deliberate and knowing refusal by DR. SPENCER and the SPENCER GROUP to pay DR. DRISCOLL'S unpaid wages, as set forth in the preceding paragraphs, such Defendants violated Cal. Lab. C. §§ 201 and 203, and are liable to DR. DRISCOLL for payment of such past-due wages, for the 30-day penalty, for interest, and all other appropriate relief.

124. Because the above facts indicate the conduct by DR. SPENCER and the SPENCER GROUP in withholding DR. DRISCOLL'S compensation was knowing, willful, and tainted by malice, DR. DRISCOLL is entitled to punitive damages, to the extent such exceed any award of double damages.

## FOURTEENTH CAUSE OF ACTION:

### BREACH OF EMPLOYMENT CONTRACT, AGAINST DEFENDANTS TODD SPENCER, M.D., AND TODD SPENCER M.D. MEDICAL GROUP, INC.

125. Relator re-alleges, and fully incorporates herein by reference, paragraphs 1-9, 11-37, and 40-53.

126. By virtue of the adverse actions against DR. DRISCOLL as detailed in the preceding paragraphs, Defendants DR. SPENCER and his SPENCER GROUP committed a material breach of the aforesaid express and implied contracts of employment with DR. DRISCOLL, including, but not limited to, the implied covenant of good faith and fair dealing that attaches to every employment contract in California and, after the expiration of the original written contract, an implied contract of employment for an indefinite term, subject to termination for good cause shown.

127. As a direct and proximate result of such breach of contract, DR. DRISCOLL individually suffered special damages, including, but not limited to, lost wages and benefits, as set forth in the preceding paragraphs.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### FIFTEENTH CAUSE OF ACTION:

#### QUANTUM MERUIT, AGAINST DEFENDANTS TODD SPENCER, M.D., AND TODD SPENCER M.D. MEDICAL GROUP, INC.

128. Relator re-alleges, and fully incorporates herein by reference, paragraphs 1-9, 11-37, and 40-53.

129. If there be a determination that there was a period when there was no contract, express or implied, in place to cover any part of the work performed by DR. DRISCOLL for DR. SPENCER and the SPENCER GROUP, DR. DRISCOLL in such circumstance nonetheless is entitled to recover, in quantum meruit, the reasonable value of such services that were provided by DR. DRISCOLL, to the extent such value was not addressed by a written or implied contract, or otherwise was not established by a meeting of the minds between DR. DRISCOLL and DR. SPENCER.

130. The reasonable dollar value of the extra hours DR. DRISCOLL worked is as set forth in the preceding paragraphs.

### SIXTEENTH CAUSE OF ACTION:

#### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY, AGAINST DEFENDANTS TODD SPENCER, M.D., AND TODD SPENCER M.D. MEDICAL GROUP, INC.

131. Relator re-alleges, and fully incorporates herein by reference, paragraphs 1-9, 11-37, and 40-53.

132. By virtue of the conduct set forth in the above-described paragraphs, Defendants TODD SPENCER, M.D. and TODD SPENCER M.D. MEDICAL GROUP, INC. terminated the employment of DR. DRISCOLL in violation of public policy.

133. The particular public policies violated by such Defendants TODD SPENCER, M.D., and the SPENCER GROUP include:

      (a)    31 U.S.C. § 3729(a)(1)(A);

      (b)    31 U.S.C. § 3729(a)(1)(B);

      (d)    31 U.S.C. § 3729(a)(1)(C);

      (e)    31 USC § 3730(h);

      (f)    18 U.S.C. § 1341;

1         (g)    Cal. Bus. & Prof. C. § 2056(a);

2         (h)    Cal. Gov. C. § 12651(a)(1);

3         (i)    Cal. Gov. C. § 12651(a)(2);

4         (j)    Cal. Gov. C. § 12651(a)(3);

5         (k)    Cal. Gov. C. § 12651(a)(8);

6         (l)    Cal. Gov. C. § 12653;

7         (m)    Cal. Health & Safety C. § 1278.5;

8         (n)    Cal. Lab. C. § 201;

9         (o)    Cal. Lab. C. § 203;

10         (p)    Cal. Lab. C. § 1102.5;

11         (q)    Cal. Penal C. § 182(a)(1);

12         (r)    Cal. Penal C. § 182(a)(4);

13         (s)    Cal. Penal C. § 182(a)(5);

14         (t)    Cal. Penal C. § 484;

15         (u)    Cal. Penal C. § 487;

16         (v)    Cal. Penal C. § 532;

17         (w)    Cal. Penal C. § 550(a); and

18         (x)    Cal. Welfare & Institutions C. § 14107.

19       134. (a) As a direct and proximate result of the aforesaid wrongful termination in violation of

20 public policy, Relator DR. DRISCOLL individually suffered special damages, including, but not limited

21 to, lost wages and benefits. (b) The amount of such damages has not yet been fully ascertained and is

22 subject to proof at trial; however, such damages are in excess of this Court's jurisdictional limits.

23       135. As a further legal result of such wrongful conduct in violation of Section 2056, Relator

24 DR. DRISCOLL has individually suffered general damages, including injury to his reputation; and as a

25 legal result of such conduct Plaintiff has experienced, and continues to experience, tremendous

26 embarrassment, humiliation, mortification, anguish and distress for which he is entitled to recover

27 damages in a sum subject to proof at trial.

28 \\\

1          136. As a further legal result of such wrongful termination in violation of public policy, DR.

2 DRISCOLL has individually suffered general damages, including injury to his reputation; and as a legal

3 result of such conduct Plaintiff has experienced, and continues to experience, tremendous embarrass-

4 ment, humiliation, mortification, anguish and distress for which he is entitled to recover damages in a

5 sum subject to proof at trial.

6          137. As a further result of such wrongful termination in violation of public policy, because the

7 above facts indicate conduct that was unlawful, knowing, wilful, and tainted by malice, DR.

8 DRISCOLL is entitled to recovery of punitive damages.

9

10                              **PRAYER FOR RELIEF**

11          WHEREFORE, Relator requests the following relief:

12          1. Judgment in favor of the United States of America against all Defendants, by reason of the

13 violations of the Federal False Claims Act as set forth above, in an amount equal to three times the

14 amount of damages the United States has sustained because of Defendants' actions, plus a statutory

15 civil penalty of not less than Six Thousand Dollars ($6,000) for each false claim, plus three times the

16 amount of damages which the United States has sustained, pursuant to 31 U.S.C. § 3729(a);

17          2. Award to Relator the maximum amount allowed pursuant to 31 U.S.C. § 3730(d), the

18 Federal False Claims Act, on the United States' recovery;

19          3. Award to Relator all reasonable expenses which the Court finds to have been necessarily

20 incurred, plus reasonable attorneys' fees and costs, pursuant to 31 U.S.C. § 3730(d)(1);

21          4. Judgment in favor of the State of California against all Defendants, by reason of the

22 violations of the California False Claims Act as set forth above, in an amount equal to three times the

23 amount of damages the State of California has sustained because of Defendants' actions, plus a

24 statutory civil penalty of not less than Five Thousand Dollars ($5,000) for each false claim, plus three

25 times the amount of damages which the State of California has sustained, pursuant to the California

26 False Claims Act;

27          5. Award to Relator of the maximum amount allowed pursuant to the California False Claims

28 Act, on the State of California' recovery;

1           6. Award to Relator all reasonable expenses which the Court finds to have been necessarily

2   incurred, plus reasonable attorneys' fees and costs;

3           7. Reinstatement, plus two times backpay, plus interest on the backpay, together with any

4   special damages; and

5           8. Such other and further relief as the Court deems proper.

6

7   Dated: October 19, 2011               DANIEL R. BARTLEY, ESQ.
                                    BARTLEY LAW OFFICES

8

                                  ATTORNEYS FOR *QUI TAM* RELATOR

9                                   SCOTT H. M. DRISCOLL, M.D.

10

11                         By:                     
                                  Daniel Robert Bartley

12

13

                      **DEMAND FOR JURY TRIAL**

14

          Relator demands a trial by jury, pursuant to FRCP 38.

15

16   Dated: October 19, 2011               DANIEL R. BARTLEY, ESQ.
                                      BARTLEY LAW OFFICES

17

                                  ATTORNEYS FOR *QUI TAM* RELATOR

18                                   SCOTT H.M. DRISCOLL, M.D.

19

20                         By:                     
                                  Daniel Robert Bartley

21

22

23

24

25

26

27

28