# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA AND STATE OF CALIFORNIA ex rel. SCOTT H.M. DRISCOLL, M.D., AND SCOTT H.M. DRISCOLL, M.D., individually and personally,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**TODD SPENCER M.D. MEDICAL GROUP, et al.,**<br><br>**Defendants.** | 1:11-cv-1776-LJO-SMS<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTIONS TO DISMISS (Docs. 78, 79)** |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. Chief District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno

Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. INTRODUCTION

Plaintiff Scott H.M. Driscoll, M.D. ("Relator"), brings this qui tam action on behalf of the United States against Defendants for their alleged false or fraudulent claims to the federal government in violation of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 et seq., and its California corollary, the California False Claims Act ("CFCA"), Cal. Gov. Code §§ 12651 et seq. *See U.S. ex rel. Anderson v. Northern Telecom*, 52 F.3d 810, 812-13 (9th Cir. 1995). Relator claims Defendants Todd Spencer, M.D., Todd Spencer M.D. Medical Group, and Madera Community Hospital (collectively, "Defendants") submitted approximately 63,500 false and fraudulent claims for Medicare and Medi-Cal payments for, among other things, unnecessary or unperformed radiology scans and procedures.

Defendants move to dismiss Relator's claims under Federal Rules of Civil Procedure 9(b) and 12(b)(6).[1] The Court took the matter under submission on the papers pursuant to Local Rule 230(g). *See* Doc. 83. For the following reasons, the Court GRANTS Defendants' motion to dismiss with leave to amend.

## III. FACTUAL AND PROCEDURAL BACKGROUND[2]

The facts relevant to resolve Defendants' motion to dismiss are few and straightforward. The Court previously granted two motions to dismiss Relator's claims. *See* Docs. 46, 64. In the second dismissal order, the Court dismissed Relator's first amended complaint without leave to amend, finding that it failed to satisfy Rule 9's particularity requirements. *See* Doc. 64. Relator appealed the order, and the Ninth Circuit reversed and remanded the case. Doc. 71 at 4. The Ninth Circuit held in relevant part:

---

[1] All further references to any "Rule" are to the Federal Rules of Civil Procedure.

[2] The following facts are drawn from Relator's Second Amended Complaint and are assumed as true for purposes of Defendants' motion. *See Lazy Y. Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

2

1  "By holding that the district court erred in dismissing the entire operative complaint, we do not mean to
2  suggest that the entire complaint is sufficiently specific." *Id.* "For example, the present complaint alleges
3  generally that tests numbering in the thousands were fraudulent, covering a period much longer than the
4  three years during which Relator worked with Dr. Spencer." *Id.* The court therefore remanded the case
5  "with instructions to allow Relator another opportunity to amend the complaint to address these
6  deficiencies and to narrow the scope of the complaint so that the litigation will be manageable." *Id.* The
7  case now proceeds on Relator's Second Amended Complaint ("SAC"). Doc. 77.

8  Relator worked as a diagnostic radiologist for the Spencer Group from December 1, 2007, to
9  April 9, 2010. *Id.* at ¶ 1. During that time, he observed "a long-standing fraudulent radiology protocol"
10 that Defendants had used for approximately a decade. *Id.* The protocol dictate how and when to perform
11 certain radiological scans. *Id.* at ¶ 18. Relator alleges that Defendants strictly adhered to the "protocol"
12 each time they performed a radiological scan and, in doing so, performed unnecessary or useless
13 procedures "for the purpose and intent of defrauding the Government" and inflated medical bills. *Id.*
14 Relator alleges "there were at least 34,500 instances" of unnecessary procedures with corresponding
15 fraudulent claims at Madera Community Hospital and "at least 29,000 [fraudulent] examination
16 instances" at Sierra Kings District Hospital. *Id.* at ¶ 44. He asserts that "[e]ach and every one of these
17 instances constitute a separate false or fraudulent claim" against the federal government or California
18 government (or both). *See id.* at ¶¶ 44, 52.

19 Relator further alleges that defendants' "Medi-Cal Provider Agreements also made clear their
20 duty . . . to charge their lowest fees . . . and refrain from conduct that would harm the Medi-Cal program
21 or its beneficiaries." *Id.* at ¶ 20. As part of those agreements, Defendants agreed to do the following:

22  **Compliance with Laws and Regulations.** Provider agrees to
    comply with all applicable provisions of Chapters 7 and 8 of the
23  Welfare and Institutions Code (commencing with Sections 14000
    and 14200), and any applicable rules or regulations promulgated
24  by DHS pursuant to these chapters.

25  **Forbidden Conduct.** Provider agrees that it shall not engage in

>   conduct inimical to the public health, morals, welfare and safety of any Medi-Cal beneficiary, or the fiscal integrity of the Medi-Cal program.
>
>   **Provider Fraud and Abuse.** Provider agrees that it shall not engage in fraud or abuse.
>
>   **Prohibition of Rebate.** Refund or Discount. Provider agrees that it shall not offer, give, furnish, or deliver any rebate, refund, commission, preference, patronage dividend, discount, or any other gratuitous consideration, in connection with the rendering of health care services to any Medi-Cal beneficiary. Provider further agrees that it shall not solicit, request, accept, or receive, any rebate, refund, commission, preference, patronage dividend, discount, or any other gratuitous consideration, in connection with the rendering of health care services to any Medi-Cal beneficiary. Provider further agrees that it shall not take any other action or receive any other benefit prohibited by state or federal law.

*Id.* at ¶ 20 (emphasis in original). According to Relator, however, "Defendants falsely and fraudulently certified compliance with [the Mammography Quality Standards Act] and other applicable laws and regulations." *Id.* at ¶ 37.

Relator brings seven claims for relief. In claims one through three, he alleges violations of 31 U.S.C. § 3729(a)(1)(A), (B), and (C) against all defendants. These sections of the FCA attach liability to any person who:

>   (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>   (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or] (C) conspires to commit a violation of subparagraph (A), (B).

31 U.S.C. §§ 3729(a)(1)(A)-(C). In claims four through seven, relator alleges violations of California Government Code §§ 12651(a)(1), (2), (3) and (8) against all defendants. These sections of the CFCA attach liability to any person who:

>   (1) Knowingly presents or causes to be presented a false or fraudulent claim for payment or approval.
>   (2) Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim.
>   (3) Conspires to commit a violation of this subdivision . . . .

4

(8) Is a beneficiary of an inadvertent submission of a false claim, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the state or the political subdivision within a reasonable time after discovery of the false claim.

Cal. Gov. Code §§ 12651(a)(1)-(3), (8).

Defendants move to dismiss all seven claims under Rule 12(b)(6) for failure to state a claim and under Rule 9(b) for failure to satisfy that Rule's particularity requirements. *See* Docs. 78, 79.

## IV. STANDARD OF DECISION

**1. Rule 12(b)(6)**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must, in accordance with Rule 8, allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . .

are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562.

Under Rule 9(b), a plaintiff alleging fraud or mistake "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "This means the plaintiff must allege 'the who, what, when, where, and how of the misconduct charged.'" *United States v. United Healthcare Insurance Company*, 832 F.3d 1084, 1101 (9th Cir. 2016) (internal citations omitted). "Rule 9(b) serves not only to give notice to defendants of the specific fraudulent conduct against which they must defend, but also '…to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'" *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). To the extent that the pleadings can be cured by the allegation of additional facts, a plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

**2. Rule 9(b)**

"The heightened pleading standard of Rule 9(b) governs FCA claims," *Cafasso, U.S. ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir.2011), and CFCA claims. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir.2003) (it is well established that "Rule 9(b)'s particularity requirement applies to state-law causes of action" that sound in fraud). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This includes "the who, what, when, where, and how of the misconduct charged," as well as "what is false or misleading about a statement, and why it is false." *Ebeid ex rel.*

*United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir.2010) (internal quotation marks and citations omitted).

## V. ANALYSIS

Under the FCA, anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" is liable to the federal government. 31 U.S.C. § 3729(a)(1)(B). "[T]he essential elements of False Claims Act liability [are]: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006). Because Relator's claims are not premised on an assertion that Defendants' claims for payment were "explicitly and/or independently false," they are only viable under two doctrines: "(1) false certification (either express or implied); and (2) promissory fraud." *See id.* at 1171 (citation omitted).

Relator proceeds under a false certification theory. It applies when a party "falsely certifies compliance with a statute or regulation as a condition to government payment." *Id.* at 1171. False certification can be explicit or implicit. *Id.* The parties dispute whether Relator brings his claims under a theory of express or implied false certification. In his opposition, Relator contends his "case is a simple run-of-the-mill case of Medicare fraud, involving *express* certification," not implied certification. Doc. 80 at 8 (emphasis in original). Because he has made that representation, the Court only analyzes his claims under the express certification doctrine.[3] *See United States ex rel. McGrath v. Microsemi Corp.*, 140 F. Supp. 3d 885, 900 (D. Ariz. 2015) (addressing only whether relator's complaint stated claim under implied false certification theory when relator's opposition did not address express certification

---

[3] The Court understands why Defendants move to dismiss the SAC on the assumption that Relator's claims are brought under an implied certification theory. For one thing, there is not only no mention of any express certification in his causes of action, but he alleges in his first cause of action that Defendants made "a false or fraudulent claim for approval or payment for Medi-Cal, with an *implied certification* of compliance with all Federal eligibility laws." SAC at ¶ 43. Nonetheless, because Relator contends his claims are premised on an express certification theory, the Court need not address whether they are viable under an implied certification theory.

theory), *appeal docketed*, No. 15-17206 (9th Cir. Oct. 29, 2015).

Express certification occurs when "the entity seeking payment certifies compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted." *U.S. ex rel. Ebeid v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). The express certification of compliance therefore is a prerequisite to payment. *See New York v. Amgen, Inc.*, 652 F.3d 103, 109 (1st Cir. 2011); *Mikes v. Straus*, 274 F.3d 687, 698 (2d Cir. 2001). "So long as the statement in question is knowingly false when made, it matters not whether it is a certification, assertion, statement, or secret handshake; False Claims liability can attach." *Hendow*, 461 F.3d at 1172.

The SAC fails to allege sufficient facts to state a claim under the FCA or CFCA and also fails to satisfy Rule 9(b)'s particularity requirements. Specifically, Relator fails to allege sufficient facts showing that Defendants expressly certified their compliance with laws or that any such certification was a necessary prerequisite to receive government funds for the tens of thousands of claims allegedly at issue in this case. First and foremost, Relator does not state anywhere in the SAC that Defendants' receiving funds government funds was conditioned on their certification of compliance with any statute or regulation. Although Relator alleges Defendants had Medi-Cal "Provider Agreements" that indicated they would comply with various state laws, Relator does not allege any further facts about the Provider Agreements. There is no indication, for instance, that the Provider Agreements applied to all of the allegedly fraudulent claims at issue in this case. There are insufficient facts concerning who was responsible for the Provider Agreements and whether and to what extent they governed the claims at issue in this case.

Simply put, Relator fails to allege sufficient facts showing who falsely and expressly certified compliance with a statute or regulation, how it was done, whether it was a prerequisite to obtain government funds, how it allegedly occurred over 60,000 times during the course of a decade, and whether and to what extent the express certification of compliance was part of claims actually submitted that resulted in payments to Defendants that would not have occurred without the certification. Relator's

conclusory allegation that "Defendants falsely and fraudulently certified compliance with [MQSA] and other applicable laws and regulations" does not suffice. Relator's claims therefore fail to state a claim and also fail to satisfy Rule 9(b)'s particularity requirements under an express certification theory.

Neither Relator nor Defendants make any attempt to distinguish the claims from one another. (Relator's opposition to Defendants' motions to dismiss contains approximately one page of argument.) It thus appears the parties do not dispute that all of Relator's claims rise and fall together in that Relator's failure to allege adequately an explicit certification theory of liability means that all of his claims fail. *See U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996) ("It is the false *certification* of compliance which creates [FCA] liability when certification is a prerequisite to obtaining a government benefit.") (emphasis in original); *United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1020 (9th Cir. 2006) ("California courts look to interpretations of the federal statute for guidance in interpreting the state statute."). Accordingly, the Court GRANTS Defendants' motions to dismiss Relator's claims with leave to amend.

## VI. CONCLUSION AND ORDER

For the foregoing reasons, the Court GRANTS Defendants' motions to dismiss (Docs. 78, 79) with leave to amend. Any amended complaint shall be filed on or before January 13, 2016. This Court has spent great time and effort to detail the deficits of the current pleading. The amended complaint, assuming that one is filed in a timely fashion, will be assumed by the Court to be the best possible pleading that the Plaintiff can produce, and should be considered to be the last attempt that will be permitted.

IT IS SO ORDERED.

Dated:  **December 14, 2016**          **/s/ Lawrence J. O'Neill**
                                                              UNITED STATES CHIEF DISTRICT JUDGE